UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TERRY DARCEL BROOKS,

               Petitioner,                    Case No. 2:18-cv-194

v.                                          Honorable Gordon J. Quist

CONNIE HORTON,

               Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner to challenge a misconduct conviction, purportedly under 28 U.S.C. § 2241. Notwithstanding his characterization, the action is governed by 28 U.S.C. § 2254.[1] Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those

---

[1] A state prisoner seeking post-conviction relief from a federal court has but one remedy: an application for a writ of habeas corpus. *See Rittenberry v. Morgan*, 468 F.3d 331, 336-37 (6th Cir. 2006). All such applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ – to both federal and state prisoners. *Id.* Most state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254. That is, if a state prisoner is "in custody pursuant to the judgment of a State court," his petition is subject to the procedural requirements of § 2254, even if the underlying validity of the state court conviction is not expressly at issue. *Id.*; *see also Thomas v. Crosby*, 371 F.3d 782, 803 (11th Cir. 2004) (parole violation); *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000) (prison disciplinary action). Petitioner is in custody from a state court judgment and his action seeks to expunge the misconduct conviction and for reinstatement of disciplinary credits. His action, therefore, is governed by § 2254.

containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

**I.      Factual allegations**

Petitioner Terry Darcel Brooks is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On September 19, 2016, Petitioner was found guilty of a Class-I misconduct charge for inciting to riot, rioting, or striking. The hearing officer imposed sanctions of 10 days' detention and 30 days' toplock. Petitioner alleges that the misconduct conviction also resulted in a loss of disciplinary credits.

The misconduct charge in issue arose out of a prison disturbance at the Kinross Correctional Facility during the early morning hours of September 10, 2016. A large number of prisoners entered the common yard area to verbally protest prison conditions. Some prisoners, whom Petitioner refers to as "fascism groups," began to destroy property in the G-Unit. The ticket alleged that Petitioner was observed on the G-Unit quiet room camera and the lobby camera applying toilet paper to cover the camera lenses, which prevented further observation of inmates on those cameras.

In response to the ticket, Petitioner submitted lengthy questions and evidence that he wanted submitted for the record before the hearing officer: what were the locations, angles, and views of the cameras; where would a person need to stand to be observed by the quiet room camera and the lobby camera; whether the person's face could be seen at the moment the camera

was being covered; whether the person could be observed from any other camera; whether other evidence showed Petitioner being part of the protest; whether direct evidence showed that Petitioner caused any damage; whether direct evidence showed Petitioner's involvement with the radicals; whether the video showed vandalism before the lobby camera was covered; whether by evacuating officers, KCF officials allowed prisoners to run the units without staff for some period and whether that situation left non-aggressive prisoners to fend for themselves and to choose between surviving and participating; demanding what a prisoner could do to stay out of harm's way; and demanding what prisoner-protections the MDOC required of officers before they were evacuated from a prisoner disturbance or riot. Most of the questions were deemed confidential for security reasons, but the video recording was provided to the hearing officer in lieu of responding to questions about what the cameras showed. (*See* Pet'r's Questions & Evidence for Record, ECF No. 1-2, PageID.27-29.)

Petitioner also proposed a lengthy list of questions for Officer Kanez, who did not appear at the hearing, but whose report was presented to the hearing officer: whether Petitioner played a part in the initial incident and whether Kanez saw Petitioner in his bunk during rounds; whether officers observed radical prisoners forcing unwilling prisoners to participate; whether Petitioner appeared to be part of the radical movement; whether Petitioner was known to be a part of the prisoner organizations who staged the rally; whether Petitioner had ever been a problem in the unit; whether Kanez had told the officer working with him not to hold anything against prisoners who went outside, rather than remaining and becoming targets; demanding the protocol for the safety of prisoners in such circumstances; and demanding an explanation of the safety measures prisoners could take in those circumstances. Most of the questions were deemed

irrelevant by the hearing investigator, but the investigator reported that he had talked to all 15 unit

officers and received the following responses:

> 1.      No Officer gave permission to any inmate to leave the unit nor did they tell any inmate to ever leave the unit for any reason during the incident.
>
> 2.      No officer heard any inmates that had come in the units while they were inside the unit, threaten harm to other prisoners if they did not go outside.

(Hr'g Investigator Memo., ECF No. 1-2, PageID.32-33.)

In the misconduct hearing report, the hearing officer recited the evidence relied

upon as follows:

> I began the hearing by viewing a video outside of prisoner's presence.  Video summarized for prisoner.  Video shows mass prisoner movement of prisoners leaving units and staying out of the units for a long period of time.  A particular video shows prisoner walking through a doorway.  Seconds later prisoner comes out with paper in his hand, and then walks under the camera.  The camera is covered.  The video and video memo are marked confidential for security purposes.  Prisoner present.  All documents are one page unless otherwise noted.  Misconduct Report, Hearing Investigation Report, including statement of HI VanSloten regarding time of review, statement and questions from prisoner (11 pgs), count sheet, marked confidential for security purposes, memorandum from HI VanSloten regarding general questions (2 pgs), Misconduct Sanction Screening Form, oral statement of the hearing investigator that the reporter observed prisoner from the video, read to and discussed with prisoner.   ORAL STATEMENT FROM PRISONER AT HEARING:
>
> Prisoner said the guys from the movement took over, otherwise you were going to be stabbed up; you don't have a choice if you have a knife to your side.
>
> I told prisoner the decision, sanction and dates prior to his leaving the hearing room.

(Misconduct Hr'g Report, ECF No. 1-2, PageID.38.)

The hearing officer then recited the reasons for the findings:

> DUE PROCESS:  Reasonable Cause for Delay:  Per PD 03.03.105, prisoners are to be reviewed within 24 hours of writing of the Misconduct Report.  I find reasonable cause for delay in reviewing the Misconduct Report due to the nature of the underlying incident.  Security needs required transfer of prisoners in advance of

review.  Prisoner's Misconduct Report arrived at 1800 at IBC and prisoner was reviewed at 1948.  No due process violation.

Prisoner requested questions of staff, the necessary answers to which may be ascertained from the video, the Misconduct Report, the HI memo regarding general questions to staff, and the count sheet.  All other questions are unnecessary, as not proving or disproving the charge. . . .

PD 03.03.105 defines incite to Riot or Strike; Rioting or Striking as:  advocating or instigating actions which are intended to seriously endanger the physical safety of the facility, person, or property or to disrupt the operation of the facility by group cessation of normal activity; participation in such action; joining others in unauthorized work stoppage.

The reporter details observing prisoner cover the G-unit quiet room camera then the lobby camera with toilet paper.  The facility was under mobilization at this time.  The video is consistent with the report, showing mass prisoner movement as prisoners leave their units.  Prisoner says he did not participate in the prisoner movement and should be charged only with Destruction or Misuse of Property.  However, the reporter sufficiently identified prisoner by Otis Face sheet, G-Unit count board and previous contact as the prisoner who covered the [G]-unit camera with toilet paper while the facility was under mobilization.  It is logical to conclude that prisoner covered the camera in coordination with the simultaneous mass movement outside of the unit.  Prisoner participated in actions which were intended to disrupt the operation of the facility by group cessation of normal activity.  That prisoner had no prior history of this type of contact does not disprove the charge.

Prisoner says if he did participate, the he was forced to do so by other prisoners.  Per the Hearings Handbook:  Duress:  If a prisoner is coerced into committing a misconduct through threats of physical force, the defense of duress may be established.  Consider:  A specific threat of bodily injury in the immediate future, no time for complaint to the authorities, no force used toward Department staff, the prisoner immediately informed the proper authorities when he obtained safety.  The evidence must be examined to determine whether the facts show that the prisoner was threatened, was so fearful of harm that his free will was overcome, and committed the misconduct because of that fear.

In this case, prisoner does not detail a specific threat of bodily harm.  Prisoner does not claim that he immediately informed the proper authorities when he obtained safety.  After examining the evidence, I am not convinced that prisoner was so fearful of harm that his free will was overcome so he was forced to cover the camera.  Charge upheld.

The facility requested restitution, but no dollar amount was provided.  No restitution is ordered.

(*Id.*, PageID.38-39.)

Dissatisfied with the hearing officer's decision, Petitioner filed a request for rehearing, arguing that the hearing investigator and the hearing officer refused to answer his interrogatories and refused to allow him to present evidence. He contended that the refusals violated prison policy and deprived him of due process. The hearings administrator denied rehearing on November 21, 2016.

Petitioner filed a complaint for judicial review in the Ingham County Circuit Court, but it was rejected, because Petitioner did not pay the filing fee and was not eligible to proceed *in forma pauperis* under Mich. Comp. Laws § 600.2963(8), on the ground that he had an outstanding balance owing on a prior case. (*See* Letter from 30th Cir. Ct., ECF No. 1-2, PageID.48-49.) Petitioner thereafter filed a complaint for superintending control in the Michigan Court of Appeals. In an order issued on March 15, 2017, the court of appeals dismissed the complaint because he was not entitled to relief under the statute. (Mich. Ct. App. Order, ECF No. 1-2, PageID.50.) Petitioner sought leave to appeal to the Michigan Supreme Court. The supreme court denied leave to appeal on July 25, 2017, because it was not persuaded that the questions presented should be reviewed by the court. (Mich. Ord., ECF No. 1-2, PageID.51.)

On October 25, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on October 25, 2018. (Pet., ECF No. 1, PageID.18.) The petition was received by the Court on October 31, 2018. The Court therefore gives Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the

prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises four grounds for relief, as follows:

I.  Due Process and Equal Protection Clause violated again[s]t the 14th Amendment, when Petitioner was denied the right to call witnesses and have documentary evidence presented to establish his innocence.

II. Constitutional due process and Equal Protections was violated through obstruction of justice, when the Administration Hearing's division impeded the legal process and blocked Petitioner from calling witnesses and having documentation presented.

III. Constitutional error occurred against the 1st Amendment when the state Court of Appeals and Michigan Supreme Court denied Petitioner right to access to court because he couldn't pay filing fees for a prior separate complaint unrelated to today[']s claim presented.

IV. Constitutional error occurred against the 14th Amendment when the Department of Corrections Employees would not follow their own rules and regulations, which is a dereliction of duty, that shown in every stage of all the claims presented by this Petitioner.

(Pet., ECF No. 1, PageID.6-8.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  The inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.

### III.     Grounds I, II, & IV:  Policy, Due Process, & Equal Protection

Petitioner's first, second and fourth habeas grounds are intertwined. In Ground I, he argues that he was denied his rights to due process and equal protection when he was not allowed to call the witnesses he wanted and did not receive answers to all of his questions. In Ground II, Petitioner alleges that the MDOC's Administrative Hearing Division impeded his rights to due process and equal protection and obstructed justice when they did not allow him to call witnesses and did not provide him the documents he requested. In Ground IV, Petitioner contends that he was deprived of his Fourteenth Amendment rights when MDOC officials were derelict in their duties to follow their own policies.

### A.     Violation of State Law or Policy

To the extent that Petitioner alleges that the administrative hearing officials failed to follow policies, he is not entitled to habeas relief. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene

on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

B.    <u>Due Process</u>

To the extent that Petitioner contends that his misconduct conviction should be overturned because he was deprived of procedural due process in his misconduct proceedings, he also fails to demonstrate constitutional error. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Although Petitioner alleges that his major misconduct conviction violated due process because it resulted in a loss of good-time credits, his contention is meritless. For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5). All of the crimes for which Petitioner was convicted occurred after April 1, 1987. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that a prisoner's "disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Petitioner has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Petitioner has not identified any significant deprivation arising from his convictions. As a sanction, Petitioner

received only 10 days' detention and 30 days' loss of privileges. Such minimal sanctions fall short of being either atypical or significant within the meaning of *Sandin*. First, detention for 10 days amounts to a significantly lesser deprivation than the 30-day period of segregation that the *Sandin* Court determined was not atypical and significant. *Id.* at 486. Moreover, if placement in segregation for 30 days is not atypical and significant, the lesser sanction of loss of privileges for that same length of time most certainly is not atypical and significant. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (30 days' loss of privileges is not atypical and significant); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (14 days' loss of privileges is not atypical and significant); *Dixon v. Morrrison*, No. 1:13-cv-1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec. 12, 2013) (15-day loss of privileges is not atypical and significant). The sanction of lost privileges here is not sufficiently significant or atypical to warrant due process protection.

Petitioner therefore fails to demonstrate that he had a liberty interest in his misconduct proceedings. Because he had no liberty interest in the proceedings, Petitioner cannot demonstrate that he was deprived of procedural due process.

Moreover, to the extent that Petitioner contends that he was deprived of his right to substantive due process, his claim also fails. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the

"decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

In the instant case, Petitioner utterly fails to allege that the hearing investigator or the hearing officer engaged in any conscience-shocking behavior such as planting evidence; he claims only that he should have been entitled to additional procedural protections. As a consequence, Petitioner fails to demonstrate an egregious abuse of governmental power.

C.    Equal Protection

Petitioner sweepingly asserts that the administrative hearing officials deprived him of equal protection of the laws. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, Petitioner has identified no fundamental right implicated by the misconduct

proceeding, other than a right to due process, which the Court previously has found was not impaired.

Because neither a fundamental right nor a suspect class is at issue, Petitioner's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Petitioner must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Petitioner utterly fails to identify any similarly situated prisoner who was intentionally treated differently, much less show that no rational basis existed for the difference in treatment. Indeed, beyond claiming that he was deprived of his right to equal protection, Petitioner makes no allegations supporting such a deprivation. Under these circumstances, Petitioner fails to demonstrate that the hearing officer's decision was the result of purposeful discrimination.

D.    Obstruction of Justice

Petitioner next alleges that the administrative hearing officials obstructed justice, in violation of 18 U.S.C. § 1512 and Mich. Comp. Laws § 750.505. To the extent that he alleges

a violation of state law, his claim is not cognizable in this action.  *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.

To the extent that Petitioner seeks to prove a violation of a criminal statute, his claim is not properly before the Court.  A private citizen, whether or not he is incarcerated, cannot litigate or compel a criminal prosecution of another.  *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692-93 (6th Cir. 1994).

Nonetheless, by claiming an obstruction of justice, Petitioner arguably contends that the hearing investigator's conduct amounted to prosecutorial misconduct and that the hearing officer deprived him of a fair hearing.  Both prosecutorial misconduct and claims about the fairness of a proceeding are due process claims.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (evaluating prosecutorial misconduct under procedural due process standard of evaluating the fairness of a trial); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (holding that, for a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor"); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (reiterating that fair proceedings before a fair tribunal, even in an administrative proceeding, is protected by the Due Process Clause).  As the Court previously discussed, because Petitioner had no liberty interest in his misconduct proceedings, he was not entitled to procedural or substantive due process.  Therefore, Petitioners's suggestion that the hearings officials "obstructed justice" by engaging in prosecutorial misconduct or biased decisionmaking does not support a due process claim that would entitle Petitioner to relief from his misconduct conviction.

### IV.    Ground III:  Denial of Access to the Courts

In Ground III of his habeas application, Petitioner argues that he was deprived of his First Amendment right to access the courts when the state court of appeals and supreme court denied him the right to seek judicial review because he was indigent and could not pay the filing fee.  In addition, in his brief in support of his claim, Petitioner contends he was deprived of his right to petition the government, because the administrative hearing proceedings denied him adequate investigation, witnesses, and an opportunity to prove his innocence.  Finally, Petitioner argues in his brief that he was denied his First Amendment right to a grievance procedure.

To the extent Petitioner asks this Court to "reverse" the decisions of the Michigan state courts to deny him leave to proceed without paying the filing fee, the Court lacks subject matter jurisdiction.  The United States Supreme Court is vested with exclusive jurisdiction over appeals from final state-court judgments.  *Lance v. Dennis*, 546 U.S. 459 (2006).  The *Rooker-Feldman* doctrine is based on 28 U.S.C. § 1257, which grants the Supreme Court jurisdiction to review the decisions of the highest state courts for compliance with the Constitution.  *See* 28 U.S.C. § 1257; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 467 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  Under the doctrine, "lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998).  Thus, "[t]he *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance*, 546 U.S. at 460 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "The pertinent question in determining whether a federal district court is precluded

under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the 'source of the injury' upon which Petitioner bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548. Here, Petitioner clearly claims injury from the decision of the state courts to deny him the ability to seek judicial review of his misconduct conviction. Petitioner's claim that the state courts, by denying him pauper status, denied him his right to access the courts therefore is barred by the *Rooker-Feldman* doctrine.

Moreover, even were the Court permitted to review the state court's denial of pauper status, and were the Court to disagree with the state-court ruling, Petitioner would not be entitled to habeas relief. Nothing about a grant of pauper status would render Petitioner's misconduct conviction unconstitutional or entitle Petitioner to a shortening of his sentence.

Petitioner next complains that the limitations on his procedural rights in the misconduct hearing violated his First Amendment right to access the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a Petitioner must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also*

*Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a prisoner must plead and demonstrate that the shortcomings in the prison procedures have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals [from criminal convictions], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Here, Petitioner does not contend that his prison misconduct proceedings amounted to a direct appeal of his criminal conviction, a habeas corpus action, or a civil rights case. As this Court previously has held, "'[t]he right of access to the courts does not encompass a right of access to prison administrative proceedings.'" *Gardner v. Mich. Dep't of Corr.*, No. 2:16-cv-2, 2018 WL 1177564, at *3 (W.D. Mich. Jan. 11, 2018) (quoting *Burns v. Heyns*, No. 1:14-cv-733, 2015 WL 4391983, at *7 (W.D. Mich. July 15, 2015)). Thus, any impairment in his ability to represent himself in in prison misconduct or prison grievance proceedings did not implicate Petitioner's right of access to the courts. Consequently, he has not pleaded an access-to-the-courts claim.

Moreover, Petitioner was not denied his First Amendment right to petition government by the administrative hearing process, even if he did not receive as many answers to questions and opportunities to present witnesses as he would have liked. Petitioner participated in his misconduct proceeding and presented the reasons why he should not have been found guilty. He also exercised his opportunity to seek a rehearing. Thus, he was not prevented by the administrative hearing officials from petitioning government.

Finally, to the extent that Petitioner argues that he was denied his First Amendment right to petition the government when he was deprived of access to the grievance process, he fails to raise a meritorious claim. Regardless of whether Petitioner was prevented from pursuing a prison grievance, he has not been prevented from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Petitioner's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). In light of the foregoing, Petitioner fails to demonstrate that he was denied his First Amendment right to access the courts by any action taken in the prison proceedings.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: November 30, 2018                          /s/ Gordon J. Quist
                                          _____
                                                GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE